Merrimack
No. 2004-397

DHB, INC.

v.

TOWN OF PEMBROKE & a.

Argued: February 9, 2005
Opinion Issued: June 14, 2005

*Wiggin & Nourie, P.A.,* of Manchester (*Gregory E. Michael* on the brief and orally), for the plaintiff.

*Upton & Hatfield, LLP,* of North Conway (*Robert Upton, II* on the brief and orally), for defendant Town of Pembroke.

DALIANIS, J. The plaintiff, DHB, Inc., appeals an order of the Superior Court (*Lewis,* J.) affirming defendant Town of Pembroke Planning Board's denial of its subdivision application. We affirm.

The record and trial court order reflect the following facts. The plaintiff is the owner or option holder of an approximately 128-acre tract of land in Pembroke. The plaintiff engaged an engineering firm, Sublime Civil Consultants, Inc. (Sublime), to help prepare a subdivision plan to develop its land. On June 23, 2003, after several preliminary meetings and interactions, the plaintiff submitted a formal application for acceptance to the Town of Pembroke Planning Board (Board) for a subdivision to be known as Pembroke Meadows. According to the plan, the subdivision would consist of 120 single-family building lots.

The plaintiff's application included a subdivision checklist containing twenty-five items, which each applicant was required to complete. On July 15, 2003, while the application was pending, Sublime met with Kerrie Diers, the Town of Pembroke's Director of Planning and Development, to discuss whether the application was complete. Diers opined that the application was incomplete because it failed to meet all of the requirements of the checklist. The plaintiff thereafter requested that the Board postpone consideration of the application until its August 26, 2003 meeting. The plaintiff did utilize the Board's July 22 meeting, however, to engage in a "conceptual discussion" of the project and obtained some specific feedback from the Board.

On August 25, 2003, the plaintiff submitted a new application and on August 26, 2003, withdrew its old application. The new application added a forty-eight unit condominium for the elderly, in addition to the 120 single-

family building lots. It was scheduled to be reviewed at the Board's September 23, 2003 meeting.

On September 9, 2003, Town counsel informed the Board that a growth management ordinance (GMO) would be posted on November 10, 2003. Any plan accepted prior to the posting of the GMO would be exempt from its requirements.

On September 18, Walter Norris, the Town's Director of Public Works, who had recently assumed engineering review responsibilities, wrote a four-page memorandum to Diers commenting upon deficiencies in the plaintiff's new application. On September 22, 2003, Sublime met with Diers and Norris, at which time Diers indicated that because of the addition of the housing for the elderly, the plaintiff would have to meet the requirements of the site plan checklist in addition to the requirements of the subdivision checklist. Diers advised the plaintiff that the application was incomplete because it failed to meet all of the requirements of the subdivision checklist and failed to meet the requirements of the site plan checklist. As a result of the meeting, the plaintiff requested that the Board continue review of its application acceptance from the September 23, 2003 meeting until the October 28, 2003 meeting, the last meeting scheduled prior to the posting of the GMO.

On October 7, 2003, the plaintiff submitted a third set of plans for 120 single-family lots, forty-eight units of housing for the elderly, the consolidation of two parcels with abutting property, and four parcels left for future development. On October 22, 2003, Norris wrote Diers another four-page memorandum detailing deficiencies in the plaintiff's application. Norris noted that the "memo is almost identical to my September 18, 2003 review of this project." On October 22, 2003, Sublime met again with Diers and Norris to discuss whether the new application met the requirements of a completed application. Both Diers and Norris expressed the view that the application was still incomplete because it failed to meet the requirements of the checklists.

During the October 28, 2003 meeting, the Board reviewed the recommendations of Diers and Norris not to accept the application, and it discussed the application with Diers. Although the Board had in the past permitted applicants to speak, the Board declined to permit the plaintiff to speak at the meeting. One Board member commented that in his seven years on the Board he could "not recall a time when the applicant had been denied the opportunity to speak." Another member stated that allowing the plaintiff to speak would be "a waste of time." The plaintiff's counsel characterized the Board's position as a "bad faith" move to rid itself of the plaintiff's subdivision plan, improperly influenced by the upcoming

expected posting of the GMO, because the plaintiff's plan would likely not be feasible under the GMO.

Nonetheless, the Board voted 6-0 not to accept the plaintiff's application for review because the plaintiff's plan "[did] not conform to the Subdivision Checklist Requirements and Site Plan Checklist Requirements .... [p]articularly as discussed by Kerrie Diers and Walter Norris." The GMO was posted on November 10, 2003, and was adopted in March 2004.

The plaintiff appealed the Board's determination to the trial court pursuant to RSA 677:15 (Supp. 2004). The trial court upheld the Board's determination. This appeal followed.

The plaintiff argues that the Board: (1) improperly refused to allow it an opportunity to speak in support of its application at the October 28, 2003 meeting; (2) incorrectly determined that its application was incomplete; (3) improperly delegated the duty of determining the information required for a complete application; and (4) acted in bad faith in refusing to accept its application. Defendant Town of Pembroke (Town) argues that it is unnecessary to reach the merits of the plaintiff's arguments because the trial court lacked subject matter jurisdiction to hear the case.

We first address the Town's argument that the trial court lacked subject matter jurisdiction to hear the plaintiff's case under RSA 677:15. We are the final arbiter of the legislature's intent as expressed in the words of the statute as a whole. We ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise. *In the Matter of Angley-Cook & Cook*, 151 N.H. 257, 258 (2004).

RSA 677:15, I, provides: "Any person aggrieved by any *decision* of the planning board concerning a plat or subdivision may present to the superior court a petition .... Such petition shall be presented to the court within 30 days after the date upon which the board voted to approve or disapprove the application." (Emphasis added.) The Town argues that the Board's vote not to accept the plaintiff's application is statutorily defined in RSA 676:4, I(c)(1) (Supp. 2004) as a "determination," and not a "decision." Thus, the Town contends that the trial court lacked jurisdiction to hear an appeal of a "determination." The plaintiff responds that the two terms are equivalent, and that the trial court had jurisdiction under RSA 677:15.

We need not decide whether "determination" and "decision" are equivalent because the plain language of RSA 677:15, I, demonstrates that the plaintiff's petition is not governed by the statute. Both parties fail to notice the second sentence of RSA 677:15, I, which states that a petition "shall be presented to the court within 30 days after the date upon which

the board *voted to approve or disapprove the application.*" (Emphasis added.) Thus, RSA 677:15, I, requires that a petition be presented only after the planning board has considered whether to approve an application.

■ A planning board cannot consider whether to approve an application before it accepts that application as complete. RSA 676:4, I(c)(1) ("Upon determination by the board that a submitted application is complete according to the board's regulations, the board shall begin formal consideration and shall act to approve, conditionally approve ... or disapprove ...."). In the present case, the plaintiff did not petition the trial court to review a decision of the board to approve or disapprove its application, as the application never reached that stage; rather, the plaintiff is appealing the Board's determination that the application is not complete. Thus, the plaintiff had no statutory right to petition the trial court under RSA 677:15.

■ Nonetheless, the trial court had jurisdiction to hear the case because, although RSA 677:15 provides no means for judicial review of the Board's determination, the court had jurisdiction to consider a petition for writ of certiorari. The superior court possesses concurrent original jurisdiction with the supreme court to grant writs of certiorari. *Bothwick v. State*, 119 N.H. 583, 590 (1979). Though the plaintiff's petition did not seek a writ of certiorari, courts are not limited by the "technical accuracy or designation of legal forms of action," *id.*, and a writ of certiorari could apply even though the plaintiff has mistaken its remedy, *Petition of Ann Crane*, 132 N.H. 293, 298 (1989).

On a sufficient petition, the question is less the form of the petition than whether there is an error correctible by the court. *Bothwick*, 119 N.H. at 590. In the present case, were the Board to have erred in determining not to accept the plaintiff's application, review in the form of a petition for writ of certiorari must apply; otherwise, an applicant could be kept in "legal limbo," as a planning board could exercise an unchallengeable veto over even the most meticulous, meritorious and undeniably complete application by simply refusing to accept it.

The Town cites *Totty v. Grantham Planning Board*, 120 N.H. 388 (1980), *overruled in part on other grounds by Winslow v. Holderness Planning Board*, 125 N.H. 262, 268-69 (2004), to support its proposition that the Board's determination not to accept the plaintiff's application was not a final decision appealable to a court of law. In *Totty*, we held that intervening parties who owned land adjoining that of an applicant could not appeal a board's grant of conditional approval of an applicant's proposal because such decision did not constitute a final approval. *Totty*, 120 N.H. at 388-89. The Town argues that if a conditional approval, after

an application had been accepted, could not be appealed as a final decision, then surely a determination not to accept an application cannot be appealed as a final decision. The Town misapprehends the context of our holding. We stated in *Totty* that an applicant could appeal if a conditional approval was *denied*, as that would foreclose further proceedings before the board. *Id.* at 389. Similarly, the plaintiff in this case is entitled to review because the Board's determination not to accept its application foreclosed further proceedings. Thus, the trial court had jurisdiction to hear the plaintiff's case.

■ We note that the standards of review for a petition for writ of certiorari and a petition under RSA 677:15 differ; however, neither party argues that the trial court applied the wrong standard of review, or that a different standard of review would have affected the outcome of this case, and thus we need not address the issue. *Compare* RSA 677:15 (reviewing court may reverse or affirm, wholly or partly, or may modify the decision when there is an error of law or when the court is persuaded by the balance of the probabilities, on the evidence before it, that said decision is unreasonable) *with Appeal of McKerley Health Facilities*, 145 N.H. 164, 166 (2000) (reviewing court may reverse where administrative body has exceeded its jurisdiction or authority, otherwise acted illegally, exercised an unsustainable level of discretion, or acted arbitrarily, unreasonably, or capriciously); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

We now turn to the merits of this case. As discussed above, at its October 28, 2003 meeting, the Board voted not to accept the plaintiff's application because it determined that it was incomplete. During the meeting and prior to the Board's vote, the Board reviewed written recommendations provided by Diers and Norris in their official capacities, and Diers commented publicly about the application's deficiencies. After Diers spoke, the plaintiff requested the opportunity to address the Board regarding the deficiencies, which request the Board denied.

The plaintiff appealed the Board's October 28 determination not to accept its application, arguing that RSA 676:4, I, provides an applicant with the right to be heard when the Board determines whether that applicant's application is complete and ready for submission. The trial court disagreed and upheld the Board's decision not to allow the plaintiff to speak.

When a trial court's review of a planning board decision is appealed, we will uphold the trial court's decision unless it is not supported by the evidence or is legally erroneous. When determining whether a decision is supported by the evidence, we look to whether a reasonable person could

have reached the same decision as the trial court based upon the evidence before it. *Cherry v. Town of Hampton Falls*, 150 N.H. 720, 723 (2004).

RSA 676:4, I (Supp. 2004), provides, in pertinent part:

> (b) The planning board shall specify by regulation what constitutes a completed application sufficient to invoke jurisdiction to obtain approval. A completed application means that sufficient information is included or submitted to allow the board to proceed with consideration and to make an informed decision. A completed application ... shall be submitted to and accepted by the board only at a *public meeting* of the board ....
>
> (c) (1) The board shall, at the next regular meeting or within 30 days following the delivery of the application ... determine if a submitted application is complete according to the board's regulation and shall vote upon its acceptance. Upon determination by the board that a submitted application is incomplete according to the board's regulations, the board shall notify the applicant of the determination .... Upon determination by the board that a submitted application is complete according to the board's regulations, the board shall begin formal consideration and shall act to approve, conditionally approve ... or disapprove ....
>
> ....
>
> (e) Except as provided in this section, no application may be denied or approved without a *public hearing* on the application. At the hearing, any applicant ... may testify in person or in writing.

(Emphasis added.)

As we have noted above, a board considers whether to approve or deny an application only after the board has voted to accept that application as complete. RSA 676:4, I(c)(1). As set out under RSA 676:4, I(e), a "public hearing" is required when a board is considering an application on the merits; *i.e.*, when a board is determining whether to deny or approve an already accepted application. With regard to the process required when a board determines whether an application is complete, RSA 676:4, I(b) merely provides that such determination shall be made at a "public meeting."

The plaintiff argues that although the legislature used the term "public meeting," an applicant still has a right to be heard when the Board is considering whether an application is complete and ready for submission. We disagree.

RSA 676:4, I, does not define the terms "public hearing" or "public meeting." When statutory terms are undefined, we ascribe to them their plain and ordinary meanings. *In the Matter of Blanchflower & Blanchflower*, 150 N.H. 226, 227 (2003). The definition of "meeting" is "an act or process of coming together," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1404 (unabridged ed. 2002), whereas the definition of "hearing" is an "opportunity to be heard, or to present one's side of a case," *id.* at 1044. The plain meaning of meeting, unlike the plain meaning of hearing, does not include an opportunity to be heard.

Nowhere in RSA 676:4 does the legislature indicate that an applicant has a right to be heard at a public meeting regarding the completeness of that applicant's application. Nor do the Board's rules of procedure support the plaintiff; under the section dealing with public hearings, the rules merely require that public hearings be held in accordance with RSA 676:4. PEMBROKE PLANNING BOARD RULES OF PROCEDURE § VI(A)(6). We conclude that the trial court correctly found that the Board did not err in denying the plaintiff the opportunity to speak at the October 28, 2003 meeting.

The plaintiff next argues that it should have been allowed to speak at the meeting because the Board's past practice of allowing applicants to speak at meetings regarding the completeness of an application cast an "administrative gloss" over the issue. We disagree.

The doctrine of administrative gloss is a rule of statutory construction. An "administrative gloss" is placed upon an ambiguous clause when those responsible for its implementation interpret the clause in a consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. If an "administrative gloss" is found to have been placed upon a clause, the municipality may not change its *de facto* policy, in the absence of legislative action, because to do so would, presumably, violate legislative intent. *Nash Family Inv. Prop. v. Town of Hudson*, 139 N.H. 595, 602 (1995). Since there is no ambiguity in the statute or the Board's procedural rules, the doctrine of "administrative gloss" does not apply.

The plaintiff next argues that the trial court erred in upholding the Board's determination that its application was incomplete. We disagree.

The "Town of Pembroke Application for Planning Board Action," as adopted on August 22, 2000, includes a "Subdivision Review Checklist" that contains twenty-five items of "Required Information." Regarding the subdivision of land, the Town of Pembroke Code states: "A completed application is one which shall ... contain *all* the information required on said forms" and "[b]e accompanied by *all* plans and documents required in

these regulations . . . ." SUBDIVISION OF LAND, TOWN OF PEMBROKE CODE § 205-14, A(1), (4) (October 15, 1999) (emphasis added). Further, the code states: "Failure on the part of the applicant to complete *any* portion of the application form . . . shall constitute an incomplete application." *Id.* § 205-14, B (emphasis added).

When the plaintiff submitted its original application on June 23, 2003, the subdivision checklist review, prepared by the Town, shows that approximately half of the twenty-five required items were incomplete. When the plaintiff submitted its second application on August 25, 2003, the review shows that approximately half of the twenty-five required items were incomplete. When the plaintiff submitted its third and final application on October 7, 2003, the review shows that seven of the twenty-five required items were incomplete. The plaintiff offers no explanation as to why the items were not completed other than to say that they merely involved "minor administrative matters." This reason is not persuasive because the regulations require that all items be completed, administrative or otherwise.

The plaintiff argues that it did not need to complete all of the required information because the Board had "sufficient information to enable [it] to make an informed decision." The plaintiff refers us to our decision in *Rallis v. Town of Hampton Planning Bd.*, 146 N.H. 18 (2001). Not only does the plaintiff misconstrue our holding in *Rallis*, it misinterprets the statutorily provided standards for a completed application. In *Rallis*, we stated that an application was sufficiently complete where the record indicated that both the planner and board chair considered the application sufficiently complete and the application included "detailed subdivision plans and the other items required by the subdivision regulations." *Rallis*, 146 N.H. at 21. In the present case, neither the planner nor the board chair nor any member of the board considered the application sufficiently complete, nor has the plaintiff provided the items required by the subdivision regulations. *Rallis* does not support the plaintiff's position.

Nor does the statutory scheme support the plaintiff's position. As referenced above, RSA 676:4, I(b) provides: "The planning board shall specify *by regulation* what constitutes a completed application sufficient to invoke jurisdiction to obtain approval. A completed application means that sufficient information is included or submitted to allow the board to proceed with consideration and to make an informed decision." (Emphasis added.) The first sentence provides that a planning board in its regulations determines whether or not an application is sufficient to invoke jurisdiction. The second sentence, defining a completed application, merely provides guidance for the planning board in constructing its regulations. As the plaintiff has not presented any proof that it satisfied the

requirements for a completed application as set out in the subdivision regulations, the plaintiff did not submit sufficient information to enable the board to make an informed decision.

The plaintiff argues that it did not have sufficient time to respond to the "voluminous list" of comments from the Town's engineer, and that it needed the Board's input so that it could resolve differences between its engineer and the Town's engineer. The record reflects that the plaintiff did not receive the Town's engineer's final set of comments until October 22, 2003, only six days before the October 28, 2003 meeting. At the Board's October 28, 2003 meeting, the Board Chair stated that the plaintiff should have "provided a written reply to the engineering comments 10 days prior to the meeting date so that the Planning Board members could review it." Obviously, this would have been impossible, given that the plaintiff had received the comments only six days prior to the meeting. To the extent that the plaintiff argues that it had an inadequate amount of time to address certain items in its third application, we note that the plaintiff had received almost identical comments from the Town's engineer on September 18, 2003, in response to its second application, and took no steps between September 18, 2003, and October 22, 2003, to respond to those comments, and made no attempt to file a written reply to the October 22, 2003 comments. To the extent that the plaintiff argues that the Board erroneously determined not to allow the plaintiff an opportunity to speak at the meeting because it did not file a written reply to the engineering comments ten days prior to the meeting, we note, as discussed above, that the plaintiff had no right to speak at the meeting regardless of whether it had filed a written reply. To the extent that the plaintiff argues that the Board erroneously determined to reject the plaintiff's application because it had not filed a written reply ten days prior to the meeting, we note that the record presented demonstrates that the Board had adequate grounds to reject the plaintiff's application because it did not complete the subdivision checklist requirements. Thus, the plaintiff's argument is without merit.

The plaintiff argues that the requirement of a site plan review for its housing units for the elderly was improperly added to the requirements for its subdivision application. We need not reach the merits of the plaintiff's argument, because, even without the requirement of a site plan review, the plaintiff's application was incomplete, as it had failed to complete all the requirements of the subdivision checklist.

■ We conclude that, based upon the evidence before it, the trial court reasonably decided to uphold the Board's determination that the plaintiff's application was incomplete.

The plaintiff argues that the Board improperly delegated its responsibility for the "completeness determination" to the Town's planner and engineer. The record reflects that the public officials, Diers and Norris, reviewed the application for completeness and made written recommendations to the Board. Diers and Norris also met with the plaintiff on two occasions. The Board made its determination at a public meeting, at which Diers and Norris discussed the application's deficiencies. There is no evidence that the Board delegated the determination to Diers and Norris. Rather, acting in their professional capacities, Diers and Norris provided recommendations to the Board that, in this case, it chose to accept.

Finally, the plaintiff argues that the Board improperly allowed Diers and Norris to amend the Town's cluster development ordinances. The plaintiff presents no evidence of such action. The twenty-third required item of the subdivision checklist states: "Applications for cluster development must supply the information required by ... the Town of Pembroke Zoning Ordinance." The record reflects that, as with the subdivision application, Diers and Norris evaluated the plaintiff's application in light of the zoning ordinance and merely made recommendations to the board as to whether the plaintiff's application met those requirements. Further, even if the Board erred in some respect with regard to its administration of the cluster development requirements, the plaintiff still failed, in its October 7 application, to complete six other items required by the subdivision checklist.

We note that, in the fact section of its brief, the plaintiff discusses the Board's approval and acceptance of a subdivision and site plan application for a development called Chickering Meadows, which occurred around the time of the plaintiff's application. The plaintiff alleges that the Town's engineer had listed numerous deficiencies in the Chickering Meadows application and recommended that the application not be accepted prior to the resolution of these deficiencies, yet the Board still accepted the Chickering Meadows application. The plaintiff, however, provides no meaningful discussion and cites no legal principles that would relate this occurrence to the present case. We therefore decline to address this allegation.

Though the plaintiff makes other arguments on appeal, such as the Board's alleged bad faith, we need not address them because they were either not properly preserved for appeal, or they lack merit and warrant

no further discussion. *Motion Motors v. Berwick*, 150 N.H. 771, 781 (2004); *see also Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.