# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2022-0202, <u>Kymalimi, LLC & a. v. Town of Salem</u>, the court on July 14, 2023, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The intervenor, DSM MB I LLC (DSM), appeals an order of the Superior Court (<u>Houran</u>, J.) directing the Planning Board (Board) for the Town of Salem (Town) to accept the site plan review application of Kymalimi, LLC (Kymalimi) as complete based on the permission of leaseholder Transform Lease Opco, LLC (Transform). We reverse. Additionally, we deny the plaintiffs' "Motion to Strike Town of Salem's <u>Memorandum of Law in Lieu of Brief</u>" as moot. <u>See</u> <u>Batchelder v. Town of Plymouth Zoning Bd. of Adjustment</u>, 160 N.H. 253, 255 (2010) ("The doctrine of mootness is designed to avoid deciding issues that have become academic or dead.").

I.    <u>Background</u>

The following facts are supported by the record. Transform is the current holder of a lease concerning a portion of the property located at 167 South Broadway in Salem (the Property). DSM is the fee owner of the Property. The lease grants Transform exclusive control over a structure on the Property that once housed a Kmart store (the Building). The lease also grants Transform the right to use the parking areas, access routes, and other infrastructure on the Property, but those use rights are shared by other tenants. The lease further grants Transform the right to assign the lease, subject to the condition that the Building "shall not be used for any unlawful purpose." Transform has the right to extend the lease to a total term of seventy-five years, in which case the lease would terminate on January 31, 2046. Kymalimi has executed a long-term sublease of the Building from Transform, with the intention of operating charitable gaming in the Building.

In March 2021, Kymalimi submitted an application for site plan review to change the use of the Building. Pursuant to RSA 676:4, the Board has adopted site plan review regulations that applicants must follow. <u>See</u> <u>Salem, N.H., Site Plan Review Regulations</u> § 268-1:3 (2012). In relevant part, the regulations require the applicant to provide a "[l]etter of permission from owner of property, if other than developer." <u>Id</u>. § 268-2:2.1.6. In addition, Section 2 of the Town's site plan review application form solicits information concerning the applicant and "owner of record if other than applicant." Section 2 indicates that

"[w]ritten permission from owner is required."  The terms "owner" and "owner of record" are not defined in this section.  Section 7 of the form, which seeks information about abutters, states that "[n]ames should be those of current owners as recorded in the Tax Records."  Kymalimi provided information about Transform in Section 2 of the application, noting that Transform is a leaseholder.  Kymalimi also submitted a letter of authorization permitting Kymalimi and its agents "to act on Transform's behalf" in connection with the site plan application.

During an April 13, 2021 meeting, the Board discussed whether Kymalimi's application was complete without a letter of authorization from the property owner, DSM.  The Board determined by vote that the application was complete.  The Board then heard a presentation from Kymalimi's representative about the substance of the application.  After a question arose as to whether the application was merely conceptual, a Board member made a motion to rescind the previous vote accepting the application as complete.  The motion failed.  The Board then discussed the application.  After hearing comments from a representative of DSM, the Board voted to continue its discussion of the application to the next meeting.

On April 26, 2021, DSM sent a letter to the Board outlining a number of concerns with Kymalimi's proposed use of the Building.  DSM's overarching concern was that the proposed change would "result in detrimental parking, traffic, public safety, and other impacts to the shopping center."  During an April 27, 2021 meeting, the Board voted to reconsider its prior "acceptance of the plan based on lack of owner consent."  The Board then voted not to accept the application because DSM, the property owner, had not provided written consent.  In response, Kymalimi and Transform initiated this action against the Town under RSA 677:15.  DSM joined as an intervenor.

In January 2022, the trial court held a hearing on the plaintiffs' complaint.  At the hearing, Kymalimi argued that: (1) it was "procedurally improper for the Planning Board to . . . accept the application, undertake substantive consideration of it, as required by the statute, and then discontinue that process" after finding that the application was incomplete; and (2) that "as a matter of law," the Town's site plan application requirement of the permission of "owner of record" was "satisfied by Transform's written permission."  Transform likewise asserted that "[a]n owner is not necessarily one owning fee simple" and that "[o]ne having a lesser estate may be the owner."  Transform emphasized that it "is the owner of the possessory right to the space that is the subject of the application to the Planning Board."

The Town argued that the trial court did not have jurisdiction to address the merits of the complaint under RSA 677:15 because the Board had not yet voted to approve or disapprove the application.  See RSA 677:15, I (2016) (a petition "shall be presented to the court within 30 days after the date upon

2

which the board voted to approve or disapprove the application" (emphasis added)). The Town and DSM argued "that the Planning Board ultimately has the inherent authority to reconsider its own decisions." DSM asserted that because it "own[s] the shared common area" on the Property that is implicated in this application, it has "the right to review what would be presented to the board."

In March 2022, the trial court issued an order ruling that "the Board was wrong as a matter of law when it determined that Kymalimi's site plan application was incomplete because DSM had not provided written permission." At the outset, the trial court determined that although "this matter should have been presented to the Court via a petition for writ of certiorari, the Court nevertheless concludes that it may properly consider the merits of this dispute." See DHB v. Town of Pembroke, 152 N.H. 314, 318 (2005) ("Though the plaintiff's petition did not seek a writ of certiorari, courts are not limited by the 'technical accuracy or designation of legal forms of action.'"). The trial court was also "unpersuaded" by "Kymalimi's suggestion that the Board lacked the discretion to reconsider its April 13, 2021 vote accepting the application as complete." The court then turned to the "central issue" in this dispute: "whether the Board properly interpreted the terms 'owner' or 'owner of record' in the site plan regulations, as those terms are used in connection with the requirement that an application contain '[w]ritten permission' from the 'owner' in order to be complete."

The trial court explained that while these terms are not defined in Section 2 of the form, Section 7 requires the names of all abutters who are "current owners as recorded in the Tax Records." The court reasoned that "[d]efining 'owner' in the middle of the form and in connection with a specific purpose suggests that the term may have a different meaning in earlier portions of the form which pertain to different purposes." Looking at the purpose of the regulation, the court noted that "interpreting the term 'owner' in a manner that excludes Transform would not serve the Town's stated purpose vis-à-vis Kymalimi's application" because the application seeks to change only the interior and use of the Building and the lease "gives Transform exclusive control" over the Building. Thus, the trial court disagreed "with the Board's apparent legal conclusion that only the fee owner can ever provide the 'written permission' necessary for a site plan application to be complete."

Accordingly, the trial court concluded that "the Board was wrong as a matter of law when it determined that Kymalimi's site plan application was incomplete because DSM had not provided written permission." The court directed the Board "to accept the application as complete with Transform's written authorization, and to complete formal consideration of the application." DSM filed a motion for reconsideration, which the trial court denied. This appeal followed.

II.    Analysis

Because the trial court below treated the plaintiffs' complaint under RSA 677:15 as a petition for writ of certiorari, we will do the same. See DHB, 152 N.H. at 318. "The judiciary's certiorari jurisdiction is limited and gives a court 'no authority to provide de novo relitigation of the original issues or to substitute its judicial discretion for the administrative judgment below.'" Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 44 (2011). The original proceeding in the trial court was limited to whether the agency unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. Id. Our review of the trial court's decision is limited to ascertaining whether it made an error of law or reached a result unsupported by the record. Id.

When interpreting planning board regulations, which we do de novo, the general rules of statutory construction govern our review. See Trustees of Dartmouth Coll. v. Town of Hanover, 171 N.H. 497, 509 (2018). Thus, the words and phrases of the regulations should be construed according to the common and approved usage of the language. Id. Moreover, we will not guess what the drafters of the regulations might have intended, or add words that they did not see fit to include. See Batchelder, 160 N.H. at 256-57. We determine the meaning of the regulations from their construction as a whole, not by construing isolated words or phrases. See id. Where the regulations define the term in issue, that definition will govern. See id. Where, as here, no definition is provided in the regulations themselves, we must look to the regulations as a whole and attempt to discern the meaning intended by the drafters. See id.

DSM argues that "the trial court erred when it determined that a tenant of a building within the parcel of land at issue was an 'owner' entitled to give permission for planning board site plan review and redevelopment over the fee simple owner's objection." (Capitalization omitted.) We agree.

There is significant interplay between the Town's site plan regulations and the accompanying application for site plan review. The regulations provide a list of materials that must be submitted to the Board "at least 21 days prior to the next Planning Board meeting." Salem, N.H., Site Plan Review Regulations § 268-2:2.1. Among the required materials is the application form as well as a "[l]etter of permission from owner of property, if other than developer." Id. §§ 268-2:2.1.1, 268-2:2.1.6 (emphasis added). Section 2 of the application itself requests the "[n]ame, mailing address & telephone number of owner of record if other than applicant" and notes that "[w]ritten permission from owner is required." (Emphases added.) Given this context, it follows that the latter statement regarding permission implicitly refers to the "[l]etter of permission from owner of property" specified in the regulations. Id. § 268-2:2.1.6. Therefore, we conclude that the phrases "owner of property" in the regulations and "owner of record" in the application are synonymous in that

4

they refer to the same entity or individual.  Under these circumstances, DSM — the fee owner of the Property — is the "owner of property."  Thus, DSM is the particular "owner of record" to which Section 2 of the application refers for the purposes of providing permission.

The plaintiffs contend that Transform should be considered an "owner of record" because "its leasehold estate is a matter of record, with a Memorandum of Lease having been recorded in the Rockingham County Registry of Deeds." Transform is the leaseholder of the Building and therefore could be said to "own" a leasehold interest.  Yet, DSM is still the "owner" of the Building itself. See R. Cunningham et al., The Law of Property § 1.2, at 5 (1984) (interpreting § 10 of Restatement (First) of Property) ("a person who has property interests conventionally grouped under a single descriptive term such as 'mortgage,' 'leasehold,' or 'easement' may properly be said either to 'own' or to 'have' the particular mortgage, leasehold, or easement although he is not the 'owner' of the . . . subject of the mortgage, leasehold, or easement").  Thus, Transform is not an "owner of property" for purposes of providing permission for Kymalimi's site development plan under the Town's regulations.

The plaintiffs further assert that "under the lease, Transform is an owner whose written consent to the site plan review application satisfied the regulations."  (Capitalization omitted.)  They emphasize that "tenants and subtenants may be owners of property with a sufficient ownership interest to pursue land use approvals independently of the fee simple titleholder or landlord."  See Snyder v. N.H. Savings Bank, 134 N.H. 32, 37 (1991) (interpreting the phrase "then record owner of the premises" to apply to all persons having record interests in the property, thus entitling a lessee under a recorded lease to notice of a mortgage foreclosure under RSA 479:25, II).  The plaintiffs also rely on Appeal of Michele, where we observed in the context of easements that "[b]ecause the term 'owner' encompasses property interests other than fee ownership, the Micheles' citation to the repeated use of the terms 'owner,' 'property owner,' and 'landowner' throughout the statutory scheme [of RSA chapter 482-A] does not advance their argument" that only fee owners can apply for a dock permit.  Appeal of Michele, 168 N.H. 98, 103 (2015).  Thus, the plaintiffs assert, "Transform falls squarely within the common and approved usage of the term 'owner' as well as 'owner of record.'"

However, just as our statutory interpretation in Snyder and Appeal of Michele relied on the specific context and statutory language in those cases, our review here is necessarily rooted in the plain and ordinary meaning of the Town's site plan review regulations, application materials, and RSA 676:4. Absent from RSA 676:4 as well as the Town's site plan review regulations, application form, and site plan checklist is any mention of leaseholders or a requirement that the applicant provide the Board with a copy of a lease if there is one.

Thus, we conclude that the trial court erred in finding that Transform's permission satisfied the requirements of the Town's site plan regulations. Accordingly, we reverse the trial court's decision.

Reversed.

MACDONALD, C.J., and HICKS and BASSETT, JJ., concurred.

**Timothy A. Gudas,**<br>**Clerk**