Rockingham
No. 2004-711

FRANK CAPARCO & a.

v.

TOWN OF DANVILLE

NORMA DROWNE & a.

v.

TOWN OF SANDOWN

Argued: June 22, 2005
Opinion Issued: November 15, 2005

*Sumner F. Kalman, Attorney at Law, P.C.,* of Plaistow (*Thea S. Valvanis* and *Sumner F. Kalman* on the brief, and *Mr. Kalman* orally), for the petitioners.

*Peter J. Loughlin,* of Portsmouth, and *Robert G. Eaton,* of Rye (*Mr. Loughlin* and *Mr. Eaton* on the brief, and *Mr. Loughlin* orally), for the respondents.

*Nolan T. Koon,* of Concord, by brief, for the New Hampshire Municipal Association, as *amicus curiae.*

BRODERICK, C.J. The petitioners appeal a decision of the Superior Court (*Morrill,* J.) upholding the impact fee ordinances adopted by the respondent towns that grant authority to the local planning boards to adjust the amount of impact fees charged. We affirm.

The relevant facts are as follows. The petitioners are individuals, businesses and a trust; namely, Frank Caparco, Homeplate II, Inc., MDR Corporation, Mahogany Realty Enterprises, Inc., Home Builders and

Remodelers of New Hampshire, Norma Drowne, Richard Drowne, Dorothy Drowne, Gary Barnes & Sons, LLC, and Patricia Villella, Trustee, Montana Realty Trust. They own property in the respondent towns of Sandown and Danville, on which they seek to construct numerous single family homes. In 1998, both towns enacted impact fee ordinances, which imposed fees upon new development to reflect the costs that would be incurred by the towns in building or improving public facilities, such as schools, to accommodate the proposed development. *See* RSA 674:21, I, V (Supp. 2004); TOWN OF DANVILLE ZONING ORDINANCE, art. XIV(A); TOWN OF SANDOWN ZONING ORDINANCE, art. VIII(2)(C). For example, under the Danville ordinance, the petitioners are required to pay a public school facility impact fee of $2,900 for each "single family detached" residence constructed. *See* TOWN OF DANVILLE ZONING ORDINANCE, art. XIV, app. A (Impact Fee Schedule).

The petitioners filed separate equitable actions, which were later consolidated, seeking relief from the impact fee ordinances, arguing that they unlawfully delegated to the local planning boards the authority to periodically adjust impact fees. The trial court ruled in favor of the respondent towns, and this appeal followed.

The petitioners argue that the ordinances usurp legislative authority because they permit planning boards to adjust impact fees periodically in violation of the innovative land use controls statute, RSA 674:21 (Supp. 2004). They also argue that allowing planning boards to adjust impact fees violates Part I, Article 28 of the New Hampshire Constitution. Before addressing the merits of the petitioners' arguments, we first review the relevant statutes and ordinances involved.

"For the purpose of promoting the health, safety, or the general welfare of the community," the legislature authorized towns to adopt innovative land use control methods, including impact fees. RSA 674:16 (Supp. 2004); RSA 674:21. Impact fees are defined as

> a fee or assessment imposed upon development, including subdivision, building construction or other land use change, in order to help meet the needs occasioned by that development for the construction or improvement of capital facilities owned or operated by the municipality, including . . . public school facilities.

RSA 674:21, V. Should a town adopt an impact fee ordinance, the statute provides that it "may provide for [its] administration . . . by the planning board," RSA 674:21, II, and that the ordinance "shall contain within it the standards which shall guide the . . . board which administers the ordinance," *id.* The imposition of impact fees, however, is restricted by statute. *See, e.g.,* RSA 674:21, V(a)-(e). For example, the amount of the

impact fee must "be a proportional share of municipal capital improvement costs which is reasonably related to the capital needs created by the development, and to the benefits accruing to the development from the capital improvements financed by the fee." RSA 674:21, V(a).

The respondent towns adopted impact fee ordinances at town meeting. Both towns are part of the Timberlane Regional School District, which commissioned a planning consultant, Bruce C. Mayberry, to prepare a methodology to calculate impact fee schedules for public schools within the district. Mayberry issued a report providing a methodology that purports to identify and evaluate numerous factors for calculating an impact fee to ensure that it represents "a proportional share of municipal capital improvement costs which is reasonably related to the capital needs created by [new] development, and to the benefits accruing to the development from the capital improvements financed by the fee" as required under RSA 674:21, V(a) (hereinafter referred to as "Mayberry report" or "Mayberry methodology"). The parties do not dispute that the respondents adopted the Mayberry methodology when promulgating their respective impact fee schedules.

Respondent Danville's ordinance states that the Mayberry methodology "represents a reasonable, rational and proportional method for the assessment of growth-related school facility costs to new residential development that will provide for partial funding of the capital costs of the [Timberlane School] District." TOWN OF DANVILLE ZONING ORDINANCE, art. XIV(B)(5). It requires that "[t]he amount of each impact fee shall be as set forth in the Impact Fee Schedules prepared and updated in accordance with [the Mayberry report]." TOWN OF DANVILLE ZONING ORDINANCE, art. XIV(E)(1). Respondent Sandown's ordinance requires

> new development to contribute its proportionate share of funds necessary to accommodate its impact on public facilities having a rational nexus to the proposed development, and for which the need is attributable to the proposed development.

TOWN OF SANDOWN ZONING ORDINANCE, art. VIII(2)(C). The ordinance's impact fee schedule references the Mayberry methodology as the means by which the fee is to be calculated. TOWN OF SANDOWN ZONING ORDINANCE, art. VIII(VII)(B).

Both ordinances also contain provisions authorizing the local planning boards to periodically adjust the amount of the impact fee. The provisions are similar but not identical. The Danville ordinance provides:

> The Impact Fee Assessment Schedule shall be reviewed annually by the Planning Board, according to the methodologies

established within the [Mayberry report]. Such review may result in recommended adjustments in one or more of the fees based on the most recent data as may be available including current construction cost information. No change in the methodology or in the impact fee schedules shall become effective until it shall have been the subject of a public hearing before the Planning Board noticed in accordance with RSA 675:7, and approved by the Board of Selectmen. The methodology and the impact fee schedule shall not be modified more frequently than annually.

TOWN OF DANVILLE ZONING ORDINANCE, art. XIV(L). The Sandown ordinance provides, in part, that "[t]he amount of the fee charged shall be calculated and reviewed annually by the Planning Board and adjusted as deemed necessary," and that the fee calculation shall be based upon:

1. Anticipated expenditures for improvements to Public Capital Facilities under Section XII for the next fiscal year(s), not to exceed ten years. Such anticipated expenditures to be reasonable and prudent.
2. Projected increase of dwellings and excess bedrooms subject to such fees, as in paragraphs A, B and C of this section for the next fiscal year(s), not to exceed six years. Such projections to be reasonable and prudent.

TOWN OF SANDOWN ZONING ORDINANCE, art. VIII(VII)(D), (E).

We turn now to the petitioners' statutory argument. They argue that "[t]here are no sections of [RSA 674:21] that allow planning boards to adjust the amount of . . . impact fees." They further contend that the ordinances contain no standards to guide the planning boards in their administration of the ordinances as required by RSA 674:21, II, but give the boards *"carte blanche* to literally establish the amount of the 'charges.'" According to the petitioners, the Mayberry methodology does not comply with RSA 674:21, II, because it incorporates a subjective standard of reasonableness and does not constitute a "mathematical 'formula' where substituting different numerical quantities that reflect some change necessarily leads to a conclusion consistent with the application of the methodology."

We are the final arbiter of the intent of the legislature as expressed in the words of the statute itself. *Sweeney v. Ragged Mt. Ski Area*, 151 N.H. 239, 241 (2004). "We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used." *Id.* Because the interpretation of a statute is a question of law, we review

the trial court's decision *de novo*. *See Crowley v. Frazier*, 147 N.H. 387, 389 (2001).

The innovative land use controls statute expressly provides that an impact fee ordinance "may provide for administration . . . by the planning board." RSA 674:21, II. Such an ordinance, however, must "contain within it the standards which shall guide the person or board which administers the ordinance." *Id.* The terms "administration" and "administers" are not defined in the statute. We look, therefore, to their common usage, using dictionary definitions for guidance, to determine whether the statute allows a town to delegate to a planning board the authority to adjust the amount of an impact fee charge. *See In re Juvenile 2003-187*, 151 N.H. 14, 16 (2004).

Common definitions of the term "administration" include:

> a furnishing or tendering according to a prescribed rite or formula . . . a meting out . . . the total activity of a state in the exercise of its political powers including the action of the legislative, judicial and executive departments . . . the management of public affairs as distinguished from the executive or political function of policy making . . . the principles, practices, and rationalized techniques employed in achieving the objectives or aims of an organization.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 28 (unabridged ed. 2002). Under another source, "administration" includes:

> 1. The management or performance of the executive duties of a government, institution, or business. 2. In public law, the practical management and direction of the executive department and its agencies.

BLACK'S LAW DICTIONARY 46 (8th ed. 2004). Further, the term "administer" includes "to manage the affairs of . . . to direct or superintend the execution, use, or conduct of . . . to mete out: DISPENSE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 27.

Notably, these common definitions do not restrict "administer" and "administration" to purely ministerial acts, but incorporate the exercise of some circumscribed discretion or judgment to effectuate identified goals. Contextual language within RSA 674:21, II itself implies that the authority of an entity charged with the administration of an innovative land use controls ordinance, like a planning board, extends beyond purely ministerial acts such as inputting numbers into a mathematical formula. In particular, the statute commands that an ordinance "contain within it the

standards which shall *guide* the person or board which administers the ordinance." RSA 674:21, II (emphasis added). The term "guide" includes "to regulate and manage ... direct or supervise [especially] toward some desirable end, course, way, or development ...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1009. Therefore, the statute's requirement that an ordinance provide standards to guide its administration includes an expectation that the administering entity will exercise some measure of sound judgment and discretion to implement the terms of the ordinance within circumscribed parameters. Accordingly, we conclude that so long as a town ordinance provides the planning board with sufficient standards to guide its periodic adjustment of impact fees as required by statute, its exercise of some discretionary authority in executing that task is in accord with RSA 674:21.

To the extent the statute is ambiguous regarding the legislature's intent, the legislative history is instructive. *See State v. Whittey*, 149 N.H. 463, 467 (2003) (when statute ambiguous, legislative history aids analysis). In a dialogue between senators who were discussing the implementation of an impact fee ordinance, the following exchange occurred:

> SENATOR NELSON: [W]hat would happen would be this. The municipality would adopt the impact fee ordinance, but would the zoning board be responsible for *setting the fees*?

> SENATOR SHAHEEN: *That would be the planning board.* The zoning board, right now, is not responsible for the implement of zoning ordinances. It is the planning boards that do that. I have to say, by the way, that I happen to chair the zoning board in the town of Madbury and I feel like boards at a local level are very accountable to their local communities.

> SENATOR NELSON: The municipality would vote to have an impact ordinance *but in fact the planning board would be the ones who determine the fee.* What recourse would an individual have, if they did not feel that it was a reasonable fee under this legislation.

> SENATOR SHAHEEN: My assumption is the same recourse that people have now, which would be an appeal process and if your appeal was not granted, you would go to court.

N.H.S. JOUR. 1504 (1991) (emphasis added). This exchange demonstrates the legislature's expectation that a planning board, as the entity administering the ordinance, would determine the amount of the impact fee. Accordingly, we conclude that pursuant to its authority to administer

an impact fee ordinance, a planning board may adjust the amount of the fee provided it does so in accordance with sufficient standards identified within a town ordinance as required by RSA 674:21.

We further conclude that the town ordinances provide the respective planning boards with standards in accordance with RSA 674:21 to guide the periodic adjustment of the amount of the impact fee charged. Both ordinances establish impact fees to be charged for each housing unit type and refer to the Mayberry methodology as the source for calculating those fees. TOWN OF DANVILLE ZONING ORDINANCE, art. XIV, app. A; TOWN OF SANDOWN ZONING ORDINANCE, art. VII(B). The Mayberry methodology itself identifies eight specific factual variables to be periodically updated, such as "school replacement costs or construction costs per square foot." Danville's ordinance expressly compels the planning board to follow the Mayberry methodology, and further limits the board's discretion by requiring that it conduct a public hearing and secure approval of the board of selectmen before implementing any change in the impact fee schedule. TOWN OF DANVILLE ZONING ORDINANCE, art. XIV(L). While Sandown's ordinance does not expressly state that the planning board must utilize the Mayberry methodology, the petitioners accept that the ordinance implicitly imposes this requirement. Further, Sandown's ordinance requires the planning board to base its fee adjustment calculation upon two key factors: anticipated expenditures for improvements to public capital facilities and the projected increase of dwellings and excess bedrooms. TOWN OF SANDOWN ZONING ORDINANCE, art. VIII(VII)(E). Neither town ordinance provides the planning boards with unfettered discretion to adjust the amount of impact fees; rather, they direct the boards to adjust the fees based upon certain factual variables, requiring them to compile and assess the underlying data.

■ In short, the innovative land use controls statute empowers towns to enact impact fee ordinances and provide for their administration by local planning boards with guiding standards. The respondent towns enacted ordinances that include methodology with circumscribed parameters to guide their respective planning boards in the administration of the periodic adjustment of the fees. Accordingly, the ordinances comport with the authority granted to towns in the enactment of impact fee ordinances under RSA 674:21.

■ We next address the petitioners' constitutional claim. They argue that the impact fee ordinances of the respondent towns violate Part I, Article 28 of the New Hampshire Constitution by permitting "charges" to be established by the planning boards without the consent of the people or authority derived from the legislature. Specifically, Part I, Article 28 of the

New Hampshire Constitution provides that: "No subsidy, charge, tax, impost, or duty, shall be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people, or their representatives in the legislature, or authority derived from that body." We have already concluded that the legislature authorized towns to delegate to planning boards the authority to exercise some discretion, under proper standards, in adjusting impact fees in their administration of impact fee ordinances. At town meeting, the residents of the respondent towns voted both to accept the method for adjusting impact fees outlined in the ordinances and for their respective planning boards to implement such adjustments. Therefore, even assuming that impact fees constitute "charges" under Part I, Article 28, the legislature and the residents of the respondent towns have consented to the impact fees as adjusted by the local planning boards. Accordingly, the petitioners' constitutional argument fails.

To the extent the petitioners advance some distinct argument that the legislature improperly delegated to planning boards its power to enact laws, we decline to address it as insufficiently developed for appellate review. *See State v. Blackmer*, 149 N.H. 47, 49 (2003).

*Affirmed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.