Rockingham
No. 2008-147

WILLIAM SCHROEDER & a.

v.

TOWN OF WINDHAM & a.

Argued: November 19, 2008
Opinion Issued: December 18, 2008

*Michael L. Donovan*, of Concord, by brief and orally, for the plaintiffs.

*Wiggin & Nourie, P.A.*, of Manchester (*Gregory E. Michael* and *Nicole M. Barsamian* on the brief, and *Mr. Michael* orally), for the intervenors, *Andrew P.* and *Christine J. Lane*, trustees of the A&C Revocable Trust.

*Beaumont & Campbell, P.A.*, of Salem, for the Town of Windham, filed no brief.

GALWAY, J. The intervenors, Andrew P. and Christine J. Lane, trustees of the A&C Revocable Trust, appeal the ruling of the Superior Court (*Nadeau*, J.) reversing the Town of Windham Zoning Board of Adjustment's (ZBA) decision to grant them an equitable waiver. *See* RSA 674:33-a (2008). We affirm.

The following facts are supported by the record. The intervenors reside on property located adjacent to Canobie Lake in Windham. In 2003, they sought to construct a detached garage on a portion of the property and obtained a building permit. After construction began, concerns arose regarding the potential impact on the surrounding wetlands. Alfred Turner, Director of Planning and Development for the Town of Windham, issued a stop work order. Turner eventually allowed construction to continue after the intervenors rotated the garage to increase the distance between excavation and wetlands and repaired the silt fencing.

Subsequently, abutters to the property filed an administrative appeal with the ZBA challenging Turner's decision to allow construction of the garage. They argued that the garage fell within the Wetlands and Watershed Protection overlay district (WWPD), which prohibits its construction. The ZBA agreed, determining that a portion of the intervenors' property falls within the WWPD, and that the garage impinges upon the WWPD in violation of the town ordinance. The superior court affirmed the ZBA's decision. As a result, Turner withdrew the intervenors' building permit.

Thereafter, the intervenors obtained from the ZBA the equitable waiver at issue here. The waiver permitted the garage to remain in its current location, despite its infringement into the WWPD. The plaintiffs, William Schroeder and Al Letizio, Jr., appealed to the superior court, arguing that the relief granted by the ZBA constitutes waiver of a use restriction, which cannot be waived under RSA 674:33-a. The court agreed and reversed the ZBA's decision to grant the equitable waiver. This appeal followed.

Our review of zoning cases is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). "The factual findings of the ZBA are deemed *prima facie* lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable." *Id.* The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the superior court. *Boccia v. City of Portsmouth*, 151 N.H. 85, 89 (2004). We will uphold the superior court's decision on appeal unless it is not supported by the evidence or is legally erroneous. *Id.*

RSA 674:33-a allows a landowner to obtain an equitable waiver when "a lot or other division of land, or structure thereupon, is discovered to be in violation of a physical layout or dimensional requirement imposed by a

zoning ordinance" if certain criteria are met. RSA 674:33-a, I. The statute further provides that equitable waivers shall only be granted "from physical layout, mathematical or dimensional requirements, and not from use restrictions." RSA 674:33-a, IV. On appeal, the intervenors argue that the superior court erred in finding that their request was for relief from a use restriction. Specifically, they argue that the zoning provision at issue is a setback provision, which constitutes a dimensional requirement.

 We have on several occasions recognized a distinction between area and use restrictions for purposes of zoning. *See Harrington*, 152 N.H. at 78; *Boccia*, 151 N.H. at 90. With respect to variances, a use variance allows the landowner to engage in a use of the land that the zoning ordinance prohibits. *Harrington*, 152 N.H. at 78. An area variance is generally made necessary by the physical characteristics of the lot. *Id.*

> In contrast to a use variance, an area variance involves a use permitted by the zoning ordinance but grants the landowner an exception from strict compliance with physical standards, such as setbacks, frontage requirements, height limitations and lot size restrictions. As such, an area variance does not alter the character of the surrounding area as much as a use not permitted by the ordinance.

*Id.* (citation omitted). The critical distinction between area and use variances is whether the purpose of the particular zoning restriction is to preserve the character of the surrounding area and is thus a use restriction. *Id.* at 78-79.

██ ██ "Whether the variance sought is an area or use variance requires a case-by-case determination based upon the language and purpose of the particular zoning restriction at issue." *Id.* Therefore, we must interpret the zoning ordinance in order to determine the purpose of the restriction. *Id.* Because the traditional rules of statutory construction generally govern our review, the words and phrases of an ordinance should be construed according to the common and approved usage of the language. *Anderson v. Motorsports Holdings*, 155 N.H. 491, 494-95 (2007). When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Id.* at 495.

In *Harrington*, we examined whether a particular provision relating to the placement of manufactured housing parks created a use or area restriction for purposes of obtaining a variance. *Harrington*, 152 N.H. at 76. The zoning provision at issue provided that the proposed park must consist of at least ten acres, and the number of housing lots within the park was not to exceed twenty-five. *Id.* at 79. We concluded that this zoning

provision created a use restriction because the limitation on the number of housing sites "applies regardless of the number of acres within the park." *Id.* at 79-80. "Thus, unlike an area restriction, the limitation on the number of manufactured housing sites is not related to the acreage or other physical attributes of the property. Rather, the restriction limits the intensity of the use in order to preserve the character of the area." *Id.* at 80.

█ Here, section 601 of the Town of Windham Zoning Ordinance establishes the WWPD. *See* TOWN OF WINDHAM, ZONING ORDINANCE AND LAND USE REGULATIONS § 601 (2008) (hereinafter ORDINANCE). The WWPD is an overlay district, which is superimposed over the existing zoning district and "imposes specified requirements . . . in addition to those otherwise applicable for the underlying zone." 10 P. ROHAN, ZONING AND LAND USE CONTROLS § 53C.08[2][a], at 53C-444.90 (2008); *see, e.g., Brewster v. Town of Amherst*, 144 N.H. 364, 365 (1999). Section 601.4.1 provides that the WWPD "shall include all lands within one hundred and fifty feet (150') of the normal high water mark" of certain named brooks and "for any other brook, stream or pond shall include all land within one hundred feet (100') of the normal high water mark of said Brook or stream and one hundred feet (100') from the normal high water of said pond." ORDINANCE § 601.4.1. While the ordinance permits certain uses within the WWPD, it restricts permitted uses to those that "do not result in the erection of any permanent building or conflict with the intents and purposes in *Section 601.1.*" *Id.* § 601.3.

█ By its plain language, the ordinance expressly prohibits the construction of permanent buildings within the WWPD. *See id.* Like the provision in *Harrington*, this restriction does not depend upon the size of the structure, its placement on the property, or the amount of the intervenors' land located within the WWPD. Construction of permanent buildings is simply not permitted anywhere within the district. Consequently, the intervenors' equitable waiver request was not made necessary "by the physical characteristics of the lot." *Harrington*, 152 N.H. at 78. It was made necessary by the WWPD's unambiguous prohibition of permanent buildings within its boundaries.

██ Furthermore, we conclude that the WWPD's restriction prohibiting permanent buildings was enacted in order to protect the character of the surrounding area, thereby creating a use restriction. The ordinance states that the purpose of the WWPD's regulations are, in pertinent part,

to guide the use of wetlands . . . in order to:

. . . .

Prevent the development of structures, or other land uses within the W.W.P.D. that would contribute to surface and groundwater contamination or reduce surface and groundwater supplies;

. . . .

Encourage those uses that can be appropriately and safely located within the W.W.P.D.

ORDINANCE § 601.1. Locating a permanent structure within the WWPD is not just an incidental deviation from strict compliance with the WWPD regulations; it directly contradicts the regulations' underlying goal of preserving the area. Thus, the prohibition of permanent buildings is a use restriction. *See Harrington*, 152 N.H. at 79.

■ Section 601.3 also supports our conclusion that this is a use and not a dimensional restriction. As stated above, section 601.3, titled "Uses Permitted," provides: "Any of the following *uses* that do not result in the erection of any permanent building . . . ." ORDINANCE § 601.3 (emphasis added). Thus, the plain language of the ordinance indicates that construction of permanent buildings is a *use* that is not permitted within the WWPD. *Id.* Further, the applicable heading in the ordinance supports our conclusion. The provisions relating to the WWPD are located within section 600 of the ordinance, titled "Use Regulation." While the heading is not conclusive of this provision's interpretation, it provides significant indication of what the drafters intended. *See Greenland Conservation Comm'n v. N.H. Wetlands Council*, 154 N.H. 529, 534 (2006). In this case, the heading is particularly significant because the ordinance has a separate section, titled "Development of Sites And Location of Buildings And Structures," which appears to set forth the ordinance's dimensional restrictions. *See* ORDINANCE § 700.

The intervenors assert that section 601.4.1 is a setback provision, and, as such, is simply a dimensional restriction that is not meant to preserve the character of the surrounding area. The intervenors rely upon our decision in *Heron Cove Assoc. v. DVMD Holdings*, 146 N.H. 211, 212 (2001), to support this assertion. This reliance is misplaced. In *Heron Cove*, the property at issue contained a small brook that ran through the property into a pond. *Id.* The Town of Windham Zoning Ordinance specifically exempted the pond from the WWPD. *Id.* at 214. The petitioner argued that, despite the presence of the brook, the land was not subject to the WWPD because of its proximity to the exempted pond. *Id.* at 214-15. The issue before us was whether this exemption covered the land contiguous to the pond. *Id.* at 215. The question of infringement into the WWPD was not at issue. Indeed, the *Heron Cove* petitioner conceded that, but for the

exemption, the land would be protected by the WWPD. *Id.* Thus, *Heron Cove* is readily distinguishable from this case.

 Furthermore, accepting the intervenors' assertion that section 601.4.1 is a setback provision would require us to conclude that the WWPD's boundaries are simply an incidental physical limitation to the underlying residential district's permitted uses. *See Harrington*, 152 N.H. at 78. Indeed, the intervenors assert that construction of the garage within the WWPD "is no different than construction of a garage being prohibited within a front, side or rear yard setback." This assertion is incorrect. Section 601 of the ordinance creates an autonomous overlay district mandating its own restrictions above and beyond those of the underlying district. *See, e.g.*, 10 ROHAN, *supra* § 53C.08[2][a], at 53C-444.90. "Land in an overlay district may be used in a manner permitted in the underlying district only if and to the extent that such use is also permitted in the overlay district." 9 ROHAN, *supra* § 53.21[6], at 53-335. As the Town acknowledged at the hearing before the superior court, the WWPD established a distinct zoning district which includes all land within 100 feet of the designated brooks and streams. *See* ORDINANCE § 601.4.1. Just as the boundaries of a residential district are not a setback for the permitted uses of an abutting zone, the boundaries of the WWPD do not merely serve as a setback requirement incidental to the otherwise permitted uses of the underlying zone. *See Harrington*, 152 N.H. at 78. The boundaries of the WWPD establish a distinct area within which certain uses, including the construction of permanent buildings, are not permitted.

 Moreover, the ordinance states: "Non-accessory buildings closer than fifty (50) feet to the W.W.P.D. shall require review by planning staff." ORDINANCE § 601.4.9. This supports our determination because it would be illogical to conclude that the boundaries of the WWPD are a mere setback when the WWPD has explicitly established a fifty-foot setback from its boundaries.

Because the superior court did not err in ruling that the ZBA improperly granted an equitable waiver from a use restriction, we affirm.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.