999 A.2d 323 (2010)
William BATCHELDER and another
v.
TOWN OF PLYMOUTH ZONING BOARD OF ADJUSTMENT.
No. 2008-847.
Supreme Court of New Hampshire.
Argued: January 20, 2010.
Opinion Issued: May 7, 2010.
*324 Upton & Hatfield, LLP, of Concord (Russell F. Hilliard and Matthew R. Serge on the brief, and Mr. Hilliard orally), for the petitioners.
Donahue, Tucker & Ciandella PLLC, of Exeter (John L. McGowan and John J. *325 Ratigan on the brief, and Mr. McGowan orally), for the Town of Plymouth Zoning Board of Adjustment.
Casassa and Ryan, of Hampton (Peter J. Saari on the brief), for intervenor Topsfield Real Estate Corporation.
CONBOY, J.
The petitioners, William and Elizabeth Batchelder, appeal an order of the Superior Court (Vaughan, J.) upholding decisions of the Town of Plymouth Zoning Board of Adjustment (ZBA) and the Town of Plymouth Planning Board (Board) approving the site plan of intervenor Topsfield Real Estate Corporation (Topsfield) for construction of a Lowe's Home Improvement Center in Plymouth. We affirm.
The following facts are supported by the record. Topsfield's proposal includes the construction of a large home improvement store and related commercial facilities. The Batchelders' property abuts the development property. Topsfield presented its proposal to the Board in 2005. The proposed development is situated on a 77.46 acre parcel entirely within the 100-year floodplain. Under the town's zoning ordinance, the site is located within the agricultural zone and portions of the site are also located within the overlaying environmentally sensitive zone (ESZ), which includes all land within 500 feet of the Baker River. Because the proposed project would be constructed within the floodplain, Topsfield must add fill to elevate the structures to or above the 100-year flood level to comply with local, state, and federal regulations. Pursuant to federal law, the placement of fill requires one-to-one floodplain compensation. To construct the structure in accordance with this requirement, Topsfield's plan includes the removal of fill from the ESZ. The Board approved the site plan application in August 2007. The Batchelders appealed to the ZBA, arguing that the Board's decision violated zoning ordinance section 710, because it allowed excavation in the ESZ. Section 710.4 of the ordinance prohibits certain activities in the ESZ, including:
B. any disturbance for which an Earth Excavation permit issued under RSA 155-E (soil and gravel mining) is required.
C. any placement or removal of fill excepting that which is incidental to the lawful construction or alteration of a building or structure or the lawful construction or alteration of a parking lot or way including a driveway on a portion of the premises where removal occurs.
D. any placement or removal of fill excepting that which is incidental to agricultural or silvacultural activities, normal landscaping or minor topographical adjustment.
Plymouth, N.H., Zoning Ordinance art. VII, § 710.4 B, C, D (2009).
In October 2007, the ZBA denied the appeal, ruling that the proposed development did not require a permit pursuant to RSA chapter 155-E and that the excavation was incidental to lawful construction. The Batchelders moved for rehearing, which was granted, and after two public hearings, the ZBA again ruled that section 710.4 did not prohibit the proposed development. In support of its decision, the ZBA concluded:
ix. Excavation and placement of fill is incidental to the approved and permitted construction plans.
x. The board determined that the work proposed by Topsfield Construction meets the definition of "except that which is incidental to lawful construction" clause, due to the fact that the placement and removal of material proposed by Topsfield Construction *326 is lawfully allowed and the proposed use is permitted, in this case, retail use.
xi. The construction of parking lots and driveways, proposed by Topsfield Construction, are all related to the infrastructure for the primary use of the site; for allowed and permitted retail uses and this activity is that which is normally and regularly associated with this type of retail activity.
The Batchelders filed another motion for rehearing, which was denied. They then appealed to the superior court, alleging that the ZBA misinterpreted the phrase "incidental to lawful construction" contained in the ordinance. The court affirmed the ZBA's decision. On appeal, the Batchelders argue that the trial court erred in affirming the ZBA's finding that the removal of fill from the ESZ was incidental to lawful construction.
We first address whether this appeal is moot, given that at the time of the appeal, Lowe's had withdrawn as an intervenor, indicating that it "is no longer interested in the case."
The doctrine of mootness is designed to avoid deciding issues that have become academic or dead. However, the question of mootness is not subject to rigid rules, but is regarded as one of convenience and discretion. A decision upon the merits may be justified where there is a pressing public interest involved, or future litigation may be avoided.
LeBaron v. Wight, 156 N.H. 583, 585, 938 A.2d 891 (2007) (quotation omitted). As Topsfield has noted in its brief, the Board's approval of the development plan was not conditioned upon, or limited to, Lowe's exclusive occupation of the site. Rather, the Board's approval related to whether the proposed development conforms with the zoning ordinance and regulations. Accordingly, even if Lowe's should abandon its site plan, another retailer could utilize the Board's approval of the project. See RSA 676:4-a (2008); see also Vlahos Realty Co. v. Little Boar's Head District., 101 N.H. 460, 463, 146 A.2d 257 (1958) ("zoning conditions and restrictions are designed to regulate the land itself and its use and not the person who owns or operates the premises by whom such use is to be exercised"). Because the issues presented are likely to be relevant to any party's pursuit of this project, we conclude that this appeal is not moot.
"We will uphold the trial court's decision on appeal unless the evidence does not support it or it is legally erroneous. Our inquiry is not whether we would find as the trial court found, but rather whether the evidence before the court reasonably supports its findings." Cmty. Res. for Justice v. City of Manchester, 154 N.H. 748, 751, 917 A.2d 707 (2007) (citation omitted). The trial court must treat all factual findings of the ZBA as prima facie lawful and reasonable. RSA 677:6 (2008). "It may set aside a ZBA decision if it finds by the balance of probabilities, based on the evidence before it, that the ZBA's decision was unreasonable." Cmty. Res. for Justice, 154 N.H. at 751, 917 A.2d 707 (quotation omitted). The party seeking to set aside the board's decision bears the burden of proof on appeal to the superior court. RSA 677:6.
Our review of the trial court's decision turns on the interpretation of the term "incidental" in the ordinance regarding lawful construction. The interpretation of a zoning ordinance is a question of law, which we review de novo. Duffy v. City of Dover, 149 N.H. 178, 181, 818 A.2d 1251 (2003).
Because the traditional rules of statutory construction generally govern our review, *327 the words and phrases of an ordinance should be construed according to the common and approved usage of the language. When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include.
Anderson v. Motorsports Holdings, 155 N.H. 491, 494-95, 926 A.2d 261 (2007) (citations omitted). "We determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases." Feins v. Town of Wilmot, 154 N.H. 715, 719, 919 A.2d 788 (2007) (quotation omitted). "Where the ordinance defines the term in issue, that definition will govern. Where, as here, no definition is provided in the ordinance itself, we must look to the ordinance as a whole and attempt to discern the meaning intended by the framers." Trottier v. City of Lebanon, 117 N.H. 148, 150, 370 A.2d 275 (1977) (citation omitted).
Both parties agree that the term "incidental" requires an examination of the relationship between the excavation activity and the primary use for which the removed earth will be used. The Batchelders assert that "incidental," as used in section 710.4(C), implies two criteriaquantity and relatedness. Accordingly, the Batchelders urge us to interpret "incidental" as applying only to excavation activities that are "minor in terms of quantity" and directly related to the construction. Regarding the first criterion, the Batchelders contend that the 200,000 cubic yards of earth being removed from the ESZ exceeds a quantity that could be considered "`incidental' to any lawful construction." As to the second, the Batchelders argue that the ordinance requires that the building being constructed must be located in the area where the excavation occurs.
Because we do not add words to the ordinance, see Duffy, 149 N.H. at 181, 818 A.2d 1251, we look to its plain language. Section 710.4(C) prohibits, within the ESZ, "any placement or removal of fill excepting that which is incidental to the lawful construction or alteration of a building or structure or the lawful construction or alteration of a parking lot or way including a driveway on a portion of the premises where removal occurs." Because the term "incidental" is not defined in the ordinance, we look to its common usage, using dictionary definitions for guidance. Caparco v. Town of Danville, 152 N.H. 722, 726, 886 A.2d 1045 (2005). The term "incidental" is commonly defined as "[s]ubordinate to something of greater importance; having a minor role," Black's Law Dictionary 830 (9th ed. 2009); something "happening or likely to happen in fortuitous or subordinate conjunction with something else," "likely to happen or naturally appertaining," The Random House Dictionary of the English Language 720 (1966); and "[o]f a minor, casual, or subordinate nature," The American Heritage Dictionary of the English Language 886 (4th ed. 2006). Thus, "incidental" generally means "subordinate."
The trial court pointed to another section of the ordinance that uses the term "incidental." Boyle v. City of Portsmouth, 154 N.H. 390, 390-91, 910 A.2d 1229 (2006) ("Words used with plain meaning in one part of an ordinance are to be given the same meaning in other parts of the ordinance, unless a contrary intention is clearly shown."). Section 710.4(D) prohibits "any placement or removal of fill excepting that which is incidental to agricultural or silvacultural activities, normal landscaping, or minor topographical adjustment." *328 (Emphasis added). We agree with the trial court's analysis: "`[I]ncidental to' cannot mean `minor' because if it did, there would be no logic to the zoning ordinance's use of the two distinct words in the same sentence." Unlike section 710.4(D), section 710.4(C) does not anywhere include the term "minor." Accordingly, reading the ordinance as a whole, see Feins, 154 N.H. at 719, 919 A.2d 788, we conclude that the term "incidental" does not imply limitations on quantity.
The Batchelders next contend that the trial court erred in interpreting section 710.4 to permit removal or placement of fill that is required for compliance with ESZ mitigation regulations. They assert that this interpretation defeats the purpose of an overlay district. See Schroeder v. Town of Windham, 158 N.H. 187, 191, 965 A.2d 1081 (2008) (defining overlay zone as "superimposed over the existing zoning district and imposes specified requirements in addition to those otherwise applicable for the underlying zone" (quotations and ellipsis omitted)). They argue that the ordinance permits only the removal of fill incidental to construction that is lawful without the excavation.
To determine whether Topsfield's proposed removal of fill is "incidental" to lawful construction, we apply the common definition of the term as "[s]ubordinate to something of greater importance; having a minor role." Black's Law Dictionary, supra. The trial court found no evidence that Topsfield had undertaken the construction project as a pretext for removing fill. The project involves real estate development, not commercial excavation; therefore, the earthmoving activities necessary to elevate the construction are merely "subordinate to" or "incidental to" the project.
The ordinance requires that the removal be incidental to "lawful construction." For construction to be "lawful" under the ordinance, fill must be added under the building area to elevate it to or above the 100-year flood level. Because placement of fill requires one-to-one floodplain compensation, fill may be added under the building only if fill is removed from another area on the property. We thus conclude that the removal of fill is incidental to lawful construction.
In so finding, we reject the Batchelders' assertion that the removal and placement of earth are prohibited by section 710.4(C) because the buildings, parking lots and driveways will not be placed on "a portion of the premises where removal occurs." The trial court found that the ZBA "acted lawfully when it treated the entire site as the premises." To construe the ordinance to require that the lawful construction occur only where the removal occurs would "add words that [the drafters] did not see fit to include." Duffy, 149 N.H. at 181, 818 A.2d 1251. We also reject the Batchelders' argument that this interpretation defeats the purpose of the ESZ. Although the purpose of the ordinance may be to "reduce the disturbance and intrusion of earth around the protected Baker River Valley," development is not prohibited in the ESZ. On the record, we conclude that it was not unreasonable or unlawful for the trial court to conclude that section 710.4(C) does not prohibit Topsfield's proposed development.
Affirmed.
DUGGAN and HICKS, JJ., concurred.