# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0015, <u>Avanru Development Group, Ltd. v. Town of Swanzey</u>, the court on August 16, 2022, issued the following order:**

The plaintiff, Avanru Development Group, Ltd. (Avanru), seeks to build a 76-unit multi-family dwelling on a parcel within the Town of Swanzey's Business District. To do so, it needs to obtain a special exception under the Town's zoning ordinance. The Zoning Board of Adjustment (ZBA) denied Avanru's request. The Superior Court (<u>Ruoff</u>, J.) vacated the ZBA's denial and remanded for further proceedings. The Town now appeals. Avanru cross-appeals the trial court's denial of its request for a builder's remedy.

This case presents three issues—whether the trial court erred: (1) in its construction of <u>Swanzey, N.H., Zoning Ordinance</u> (hereinafter, Ordinance) § XII(C)(2)(a); (2) in its construction of Ordinance § XII(C)(2)(b); and (3) in failing to grant Avanru a builder's remedy. The court is unanimous that the trial court did not err with respect to the denial of the builder's remedy and its interpretation of Ordinance § XII(C)(2)(b). The court, however, is equally divided as to whether the trial court erred in its interpretation of Ordinance § XII(C)(2)(a). Accordingly, the trial court's order is affirmed. <u>See</u> <u>PK's Landscaping, Inc. v. N.E. Telephone Co.</u>, 128 N.H. 753, 758 (1986) (affirming order granting summary judgment by an equally divided court); <u>Katherine Frederick v. New Hampshire Department of Health and Human Services</u>, No. 2019-0156 (N.H. March 12, 2021) (non-precedential order) (affirming the trial court's dismissal of a case as barred by the statute of limitations by an equally divided court).

As an initial matter, we address Avanru's cross-appeal. In an effort to avoid further proceedings before the ZBA, Avanru asks us to reverse the trial court's denial of its request for a builder's remedy. A builder's remedy is the granting of a right to complete a proposed project. <u>Cmty. Res. for Justice v. City of Manchester</u>, 157 N.H. 152, 155 (2008). This is an extraordinary remedy, the denial of which we review for an unsustainable exercise of discretion. <u>Id</u>.

As we will subsequently discuss, in considering Avanru's special exception application, the ZBA conducted an improper analysis. In remanding to the ZBA, the trial court determined that the proper remedy was for the ZBA to reconsider the application in a manner consistent with its order. As the

granting of a builder's remedy is within the discretion of the trial court, and Avanru has not demonstrated that the trial court's order constitutes an unsustainable exercise of discretion, we deny the relief requested in Avanru's cross-appeal.  See id.; Soares v. Town of Atkinson, 129 N.H. 313, 316 (1987).

We now turn to the issues that involve the interpretation of the Swanzey Zoning Ordinance.  The interpretation of a zoning ordinance is a question of law, which we review de novo.  Batchelder v. Town of Plymouth Zoning Bd. of Adjustment, 160 N.H. 253, 256 (2010).  The traditional rules of statutory construction govern our review.  Id.  Therefore, we construe the words and phrases of an ordinance according to their common and ordinary usage.  Id. We determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words and phrases.  Id. at 257.  We will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include.  Id. at 256-57.

The Ordinance divides the Town into districts and defines permitted uses within each district.  The Business District "is intended to provide for the development of commercial uses that are oriented to the traveling public or are traffic generators of such size as to be more properly located on a highly accessible highway network."  Ordinance § II(A)(4).  Section V of the Ordinance provides that, in the Business District, "no buildings or premises shall be erected, altered or used and no land shall be used for any purpose except" for fourteen specific "uses permitted."  Ordinance § V(B)(1).  Among the permitted uses are the following: a hotel, motel, inn or bed and breakfast facility, a nursing home, a restaurant, a warehouse, and a function hall.  Id.  In addition, six uses are permitted only if the ZBA grants a special exception.  One of these uses is the multi-family dwelling use.  Ordinance § V(B)(2).  Thus, the Ordinance creates two tiers of uses that are permitted in the Business District: the fourteen uses permitted as of right and the six uses conditioned on the grant of a special exception.  Ordinance § V(B).

Section XII of the Ordinance provides that the "[ZBA] shall have the power to hear and decide Special Exceptions to the terms of this Ordinance, and in doing so, may grant approval in appropriate cases and subject to appropriate conditions and safeguards for the protection of the public health, safety, and welfare."  Ordinance § XII(C)(2).  In order to receive a special exception, the applicant has the burden of presenting sufficient evidence to support a favorable finding on each of the specified requirements.  McKibbin v. City of Lebanon, 149 N.H. 59, 61 (2003).  The Ordinance establishes the following requirements for approval of a special exception:

a. The proposed use is similar to one or more of the uses already authorized in that district and is in an appropriate location for such a use; b. Such approval would not reduce the value of any property within the district, nor otherwise be injurious, obnoxious, or offensive to the

2

neighborhood; c. There will be no nuisance or serious hazard to vehicles or pedestrians; d. Adequate and appropriate facilities will be provided for the proper operation of the proposed use.

Ordinance § XII(C)(2).

The ZBA found that the application did not satisfy the requirements of subsection (a) or (b). We will address subsection (b) first because the court is unanimous on this issue. We will then address subsection (a), on which the court is equally divided.

Subsection (b) requires that Avanru's proposed project "would not reduce the value of any property within the district, nor otherwise be injurious, obnoxious, or offensive to the neighborhood." With respect to this requirement, a majority of the ZBA determined that the project was "offensive to the neighborhood," and, therefore, that Avanru failed to satisfy the requirement.

The superior court concluded that, as used in the Ordinance, "offensive" refers to the proposed use of the property, not the physical structure of the proposed project, and that the ZBA, by relying on public comments, improperly based its conclusions on the project's aesthetics. Additionally, the trial court found that, although the ZBA must give public comments some weight, here the ZBA "erred in judging the application solely on its popularity."

On appeal, the Town argues that the trial court erred when it ruled that the ZBA should not take into account the physical characteristics and aesthetics of the project. Avanru counters that "offensive" cannot mean that the project is generally unpopular. We agree that equating "offensive" with "unpopular" is not consonant with the overall design and purpose of the Ordinance. See Batchelder, 160 N.H. at 256; Bethlehem v. Robie, 111 N.H. 186, 188 (1971) ("[T]he zoning ordinance was designed to protect neighborhoods and land values, and the granting or denial of a permit is not dependent upon the consent or objection of present owners of adjoining property."). By its terms, the Ordinance deems a multi-family dwelling use in the Business District to be "essentially desirable," yet it also requires the proposed "location must be considered in light of special restrictions or conditions tailored to fit the unique problems which the use may present." Ordinance §§ XII, V(B)(2)(b); see also 3 Sara C. Bronin & Dwight H. Merriam, Rathkopf's The Law of Zoning and Planning § 61:6, at 61-17 to 61-18 (4th ed. 2017) (describing the use of special exceptions and noting "because the use in some places or in some respects might be incompatible with the uses permitted as of right in the particular district, a special permit with discretionary review and the ability to condition the approval, is warranted").

Thus, the Ordinance requires the ZBA to identify the "unique problems" a multi-family dwelling use may present if constructed in its proposed location

within the Business District and, whether in light of those "unique problems," the second requirement is met.  Ordinance § XIII; see also Bronin & Merriam, supra § 61:6, at 61-17 ("special exception permits are designed to meet problems that arise where certain uses or activities, although potentially appropriate for the district, should not be permitted . . . as a matter of right, because of hazards inherent in the use, incompatibility with surrounding uses, or limitations of the proposed location").

The ZBA did not identify or address any unique problems that may be inherent in, or associated with, the multi-family dwelling use.  Absent consideration of issues associated with this proposed use in the Business District, the ZBA could not properly determine whether Avanru had established that the proposed project would "not reduce the value of any property within the district, nor otherwise be injurious, obnoxious, or offensive to the neighborhood."  Ordinance § XII(C)(2)(b).

Rather, the ZBA focused its analysis exclusively on the aesthetic issues that were particular to this specific project.  It is, however, undisputed by the parties that this exact structure could be built as a matter of right if it were a hotel or nursing home, and that the project complies with all of the design requirements of the Ordinance, including setback and height.  We, therefore, hold that the superior court correctly concluded that the ZBA erred when it failed to analyze the implications of the use on the Business District and instead focused on aesthetic issues, such as landscaping, which are more properly addressed during the site plan review process before the planning board.  See RSA 674:44 (2016).

Finally, we address the requirements of subsection (a).  Subsection (a) contains two requirements: First, that "[t]he proposed use is similar to one or more of the uses already authorized in that district . . . ."  Ordinance § XII(C)(2)(a).  And second, that the use "is in an appropriate location for such a use."  Id.  As neither the trial court nor the ZBA explicitly addressed whether the proposed project "is in an appropriate location for such a use," but rather addressed only whether the proposed use was "similar to one or more of the uses already authorized" in the Business District, we will limit our analysis to the first requirement.

With respect to the first requirement of subsection (a), Avanru argued to the ZBA that the project was similar to a nursing home or a hotel, which are permitted uses.  However, in reaching its decision, the ZBA compared Avanru's proposed project only to multi-family dwelling projects previously granted a special exception in the Business District, concluding, based on "density and setbacks and utilization of the land," that the proposed project was not similar to the previously approved multi-family dwelling projects in the district.  The superior court concluded that the ZBA erred in considering previously

4

approved special exception projects, and that it should have compared Avanru's project only to those uses permitted as of right in the Business District.

On appeal, the Town argues that it was the trial court, rather than the ZBA, that erred in its interpretation of subsection (a) when it ruled that "uses already authorized" did not include those uses previously authorized by special exception. Avanru counters that the trial court's interpretation was correct; specifically, that "uses already authorized" means only those uses permitted as of right in the district.

Justices Hicks and Bassett would reverse the trial court and conclude that the plain language of the requirement contemplates that the ZBA will compare the proposed project to uses authorized as of right in the Business District as well as those uses previously authorized by special exception in the district. In their view, the phrase "uses already authorized" cannot mean the same thing as "uses permitted" because had the Town wished to limit the comparison to only those fourteen uses listed in the Ordinance, it would have said as much by requiring comparison only to uses "permitted" in the Ordinance. See City of Concord v. State of N.H., 164 N.H. 130, 141 (2012) (employing the "well-recognized principle of [statutory] construction that where the enacting body uses two different words, it generally means two different things" (quotation omitted)); compare Ordinance § XII(C)(2)(a), with Ordinance § V(B)(1).

In addition, these justices emphasize that the town chose to use the word "already" to temporally modify the phrase "uses authorized." See Oxford English Dictionary (online ed. last updated June 2022), https://www.oed.com/view/Entry/5730?redirectedFrom=already#eid). (defining "already" as "[b]efore the time in question . . ."). The addition of such a modifier supports construing "uses already authorized" to mean something different than "permitted uses" because adding the word "already" to modify only those uses permitted as of right would, in fact, add no meaning at all. By contrast, the use of the word "already" does add meaning when used to modify the more encompassing phrase "uses authorized." Thus, they conclude that the phrase "uses already authorized" refers to both those uses permitted as of right in the district, as well as those uses previously authorized in the district by special exception.

Chief Justice MacDonald and Justice Donovan would affirm the trial court. These two justices conclude that a construction of subsection (a) that permits consideration of projects authorized by special exception runs counter to the purpose of a special exception. A special exception "permits the inclusion into the zoning pattern of uses considered to be essentially desirable, but where the nature of the use is such that its location must be considered in light of special restrictions or conditions tailored to fit the unique problems

5

which the use may present." Ordinance § XIII.  A special exception "relates to a specific use in a specific location."  Id.; see also Peter J. Loughlin, New Hampshire Practice: Land Use Planning and Zoning § 23.01 (4th ed. 2010) (noting the term special exception is "actually a bit of a misnomer since the use is specifically provided for in the ordinance as one to be permitted where the conditions legislatively prescribed are found and is not an exception to the ordinance").

Therefore, in their view, a use authorized by special exception does not become generally authorized once the ZBA grants a special exception for the use.  Rather, only the "specific use in a specific location" is authorized and the ZBA must begin its analysis anew for every special exception application.  See Ordinance §§ XII(C)(2), XIII.  These justices believe such a location-specific examination necessarily renders comparisons between special exception projects immaterial.  They are concerned that such comparisons would get ever more attenuated and meaningless over time.  Finally, these justices note that neither the Town nor Avanru advocated for or offered briefing on the outcome advocated by the two other justices.

The court, having affirmed the trial court on the first two issues, and being equally divided regarding the third issue, affirms the order of the trial court.

Affirmed.


MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., participated.


**Timothy A. Gudas,**
**Clerk**

6