**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2021-0383, <u>Joy Street, LLC v. Town of Chesterfield</u>, the court on May 2, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, Joy Street, LLC, appeals a decision of the Superior Court (<u>Ruoff</u>, J.) affirming a decision of the Town of Chesterfield's Zoning Board of Adjustment (ZBA). We affirm.

I

The following facts are drawn from the certified record or are otherwise supported by the record. This case concerns a deck and walkways constructed out of "permeable pavers" located within the Chesterfield residential and Spofford Lake zoning districts. In April 2019, the plaintiff received a permit from the New Hampshire Department of Environmental Services (NHDES) to replace 504 square feet of deck and walkway with permeable pavers. Thereafter, the plaintiff installed additional permeable pavers, increasing the total square footage of pavers on the property to 2,071 square feet. NHDES inspected the installation on October 15, 2019, and on November 21, 2019, granted a permit allowing the plaintiff to "retain impacts associated with the installation of 2,071 square feet of pervious permeable patios and walkways."

On October 17, 2019, the Town of Chesterfield (the Town) notified the plaintiff that, under the relevant zoning ordinances, the pavers were impermeable structures which, together with the existing structures on the lot, exceeded the allowed impervious lot coverage. On November 7, 2019, the Town issued a "Notice of Violation and Cease and Desist Order" for violation of the Chesterfield Zoning Ordinance (CZO), notifying the plaintiff that it would be subject to statutory fines for each day that "violations continue." Specifically, the Notice advised that only the initial 504 square feet of pavers were permitted and all others needed to be removed as violative of the 20% coverage limitation under CZO 203.4. The plaintiff promptly filed an "Appeal From an Administrative Decision" seeking to have the November 7 decision reversed.

The ZBA held a hearing to review the plaintiff's appeal on February 18, 2020. During the hearing, the ZBA heard testimony on the nature of the pavers. There was also discussion about the maintenance and efficacy of the product over its 25-year lifespan. The ZBA also discussed the definition of

"impermeable" under the CZO, the reason that pavers like the ones at issue do not fall under that definition, and the proper process for receiving permitting from the Town.

The ZBA continued the hearing to its May 12, 2020 meeting. The scope of the May hearing was limited to whether the definition of "impervious" under the Shoreland Water Quality Protection Act (Shoreland Protection Act), RSA ch. 483-B (2013), or the CZO controlled. There was no dispute that under the CZO the pavers are considered "impermeable coverage" and that the construction brought the total impermeable coverage over the "20% of the area of the lot" allowed by the ordinance. Thereafter, the ZBA continued the hearing to June 11, 2020. Most of the discussion during the June 11 hearing concerned whether the definition in the Shoreland Protection Act or the CZO controlled under the circumstances. After some discussion about the evidence presented during the three hearings, the ZBA unanimously voted to deny the plaintiff's appeal. The plaintiff moved for rehearing, which was denied.

The plaintiff appealed the ZBA's decision to the superior court. The trial court first addressed whether the definition of "impermeable" contained in RSA chapter 483-B preempts the definition contained in the CZO and, therefore, controls. The court concluded that RSA chapter 483-B does not preempt the CZO because RSA 483-B:3, II expressly "allows stricter local laws to control over state laws," and RSA 483-B:8 "encourages towns to 'adopt land use control ordinances [relative] to all protected shorelands which are more stringent than the minimum standards [contained] in [RSA chapter 483-B].'" (Quoting RSA 483-B:8, I.) As a result, the trial court determined that the ZBA was correct in concluding that the more stringent definition of "impermeable" under the ordinance applied. It ultimately affirmed the decision of the ZBA, finding that the plaintiff's "pavers were clearly impermeable under [CZO] 203.6 and thus the lot exceeded the total allowable impermeable coverage." This appeal followed.

II

Our review in zoning cases is limited. Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019). The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court. Id. The factual findings of the ZBA are deemed prima facie lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it that the ZBA's decision is unreasonable. Id. The trial court's review is not to determine whether it agrees with the ZBA's findings, but to determine whether there is evidence upon which they could have been reasonably based. Id. The trial court reviews the ZBA's statutory interpretation de novo. Id. We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous. Id. We review the trial court's statutory interpretation de novo. Id.

2

III

The present dispute concerns the relationship between RSA chapter 483-B and CZO 203.6.[1]  Resolution of this dispute requires us to engage both in statutory interpretation and the interpretation of a zoning ordinance.  The interpretation of a statute is a question of law, which we review de novo.  Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 733 (2020).  In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Id.  We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result.  Id.  We do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.  Absent an ambiguity, we will not look beyond the language of the statute.  Id.

Likewise, the interpretation of a zoning ordinance is a question of law that we review de novo.  Batchelder v. Town of Plymouth Zoning Bd. of Adjustment, 160 N.H. 253, 256 (2010).  The traditional rules of statutory interpretation generally govern our review.  Id.  Thus, the words and phrases of an ordinance should be construed according to the common and approved usage of the language.  Id.  When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent.  Id.  Moreover, we will not guess what the drafters of the ordinance might have intended, or add words that they did not see fit to include.  Id. at 256-57.  We determine the meaning of a zoning ordinance from its construction as a whole, not by construing isolated words or phrases.  Id. at 257.

The plaintiff asserts that, although it "does not now contend or ever contended that the enactment of RSA 483-B preempted the impervious or impermeable coverage issue," the zoning ordinance "expressly included wording that preempts those provisions in its ordinance which conflict with the provisions of RSA 483-B."  The plaintiff's argument relies on language in CZO 203.6, which states in relevant part:

---

[1] The parties have not provided a copy of the zoning ordinance for our review; nonetheless, they do not dispute that the language articulated by the trial court is accurate.  For this reason, we rely on the ordinance language provided by the trial court wherever applicable.

> In the Spofford Lake District, all uses shall first be regulated by the Shoreland Protection Act (RSA 483.B — see Appendix B) and then permitted in compliance with the existing residential district . . . .

The plaintiff relies on the language in CZO 203.6 — "all uses shall first be regulated by the Shoreland Protection Act" — to support its assertion that the Town has created an ordinance that allows the statute to preempt its own regulation. The plaintiff interprets this language to mean that wherever the language of the municipal regulation is in conflict with the standards contained in RSA chapter 483-B, the standard contained in the statute preempts the municipal ordinance. We disagree.

The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, state law. Girard v. Town of Plymouth, 172 N.H. 576, 585 (2019). State law impliedly preempts local law when there is an actual conflict between the two. Id. Unless the state statute provides otherwise, a conflict resulting in preemption exists when a municipal ordinance or regulation permits that which a state statute prohibits or vice versa. Id. Moreover, even when a local ordinance does not expressly conflict with a state statute, it will be preempted when it frustrates the statute's purpose. Id. Because preemption is essentially a matter of statutory interpretation and construction, whether a state statute preempts local regulation is a question of law, which we review de novo. Id.

RSA chapter 483-B sets forth "minimum standards necessary to protect the public waters of the state of New Hampshire." RSA 483-B:2. These standards concern "the subdivision, use, and development of the shorelands of the state's public waters." Id. Reflecting a town's general regulatory authority over land use in its municipality, see RSA 674:16, II (2016) ("The power to adopt a zoning ordinance under this subdivision expressly includes the power to adopt innovative land use controls."), RSA chapter 483-B contains an express grant of authority allowing municipalities to "adopt land use control ordinances relative to all protected shorelands which are more stringent than the minimum standards contained in this chapter." RSA 483-B:8, I. Moreover, RSA chapter 483-B provides that "[w]hen the standards and practices established in this chapter conflict with other local or state laws and rules, the more stringent standard shall control." RSA 483-B:3, II.

The plaintiff contends that the zoning ordinance mandates that RSA chapter 483-B controls wherever the statute and ordinance conflict; however, nothing in the language of CZO 203.6 supports this position. Furthermore, the Shoreland Protection Act itself expressly allows the municipality to more stringently regulate land use, RSA 483-B:8, I, and expressly states that whenever there is conflict between the statute and the local authority "the more stringent standard shall control," RSA 483-B:3, II. This express grant of authority resolves any express or implied conflict between the statute and the

4

ordinance.  As a result, we conclude that RSA chapter 483-B does not preempt the municipal regulations, either by its own terms or by the terms expressed in CZO 203.6.

No argument has been raised that the zoning ordinance's definition is arbitrary or unreasonable.  Nor is there any dispute that, under the CZO, the pavers are considered "impermeable coverage" and that the installation of the pavers brought the total impermeable coverage over the "20% of the area of the lot" allowed by the CZO.  As a result, we conclude that the additional pavers installed were not permitted.  For this reason, we conclude that the trial court did not err in affirming the ZBA decision.

<u>Affirmed</u>.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**